UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY D. JORDAN, | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-13-0035 |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|    *Defendant.* | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for supplemental security income benefits. The matter is before the court on the parties' cross-motions for summary judgment (Dkts. 19, 21). The court recommends that defendant's motion be granted and plaintiff's motion be denied.

## Background

Jordan filed for benefits alleging he was disabled as of March 2, 2005 due to hepatitis C, shortness of breath, knee problems, and mental problems. His application was denied initially and on reconsideration and a hearing was held on November 23, 2011. The Administrative Law Judge (ALJ) rendered a decision on January 9, 2012 that Jordan was not disabled within the meaning of the Social Security Act. The

Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

## Analysis

### A. Standard of Review

Section 405(g) of the Social Security Act sets forth the standard of review in Social Security disability cases. In the Fifth Circuit, appellate review is limited to (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The evidence must be enough to allow a reasonable mind to support the Commissioner's decision. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401(1971)). The court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In order to qualify for disability benefits, a claimant must prove she has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(s)(3)(A); *Masterson*, 309 F.3d at 271.

The ALJ must follow a five-step sequential analysis to determine whether a claimant is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can the claimant still perform his past relevant work? If so, he is not disabled. If not, then the agency must assess the claimant's residual functional capacity (RFC).

5. Considering the claimant's RFC, age, education and work experience, is there other work he can do? If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry; the burden shifts to the Commissioner at the fifth step. *Id.*

**B.     The Commissioner's Decision and the Evidence of Record**

The ALJ analyzed Jordan's claim in accordance with the 5-step sequential process. At step one, the ALJ found that he had not engaged in substantial gainful activity since his application date. At step two, the ALJ found that Jordan had the severe impairments of cognitive disorder, borderline intellectual functioning, history of hypertension, mitral valve prolapse, and pre-treatment hepatitis C, none of which met or equaled a listing. The ALJ determined that Jordan had no past relevant work, and retained the residual functional capacity to perform medium work, with certain mental limitations. Proceeding to step five, the ALJ concluded, based on the testimony of a vocational expert, that Jordan could perform jobs that existed in significant numbers in the national economy and thus was not disabled within the meaning of the Act.

Jordan argues that the ALJ erred by (1) failing to consider limitations from his severe hand impairment; and (2) failing to properly consider the medical opinion of an examining consultative physician regarding his mental limitations, and failing to include all those limitations in his RFC.

**1.     Alleged hand impairment.**

Jordan's application for benefits did not list a hand impairment (Dkt. 10-7, at 3), indicating he did not consider it a severe impairment at that time. And, beyond

mentioning some numbness, he did not identify hand problems when questioned about his disability at the hearing, stating that his primary problem was getting along with people. Dkt. 10-3 at 55.

In a June 2010 exam, Jordan had strong grip strength and no swelling in his upper extremities, and there is no mention of finger clubbing. Dkt. 10-11 at 27-28. A consultative neurophysical exam in September 2010 does not identify clubbing as an impairment, and reflects "poor visual motor integration" but no functional limitation related to clubbing. Dkt. 10-9 at 24-34. A February 2011 report notes clubbing of fingers, but also reports "a normal exam of extremities," with "no clubbing, cyanosis, or edema." Dkt. 10-9 at 59. In April 2011, Jordan self-reported that his clubbing was getting worse, but his complaint was shortness of breath and no symptoms or functional limitations regarding clubbing were addressed. Dkt. 10-20 at 9-10. And in a May 2011 exam, he exhibited symmetric grip strength and there was no mention of clubbing. Dkt. 10-20 at 76-79.

While the record clearly supports a finding that Jordan had clubbing of his fingers, there is no evidence in the record that this condition would be expected to interfere with his ability to work. *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The diagnosis of an impairment does not establish disability or severity. *Hames*

*v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The ALJ did not err by failing to find that Jordan suffered a severe hand impairment.

### 2. Mental health limitations

Dr. Larry Pollock conducted a General Diagnostic Battery and Neuropsychological Evaluation of Jordan on September 2, 2010. Dkt. 10-9 at 24-34. Pollock administered numerous tests and diagnosed Jordan with a cognitive disorder, an adjustment disorder, and cocaine dependence in remission. The ALJ found that Jordan has a severe cognitive disorder.

Pollock determined that Jordan had 12 "functional limitations."[1] Pollock also identified 11 "personal assets," including the ability to understand directions. Pollock noted that Jordan is "unlikely to be competitively employable due to his criminal history and drug history," but gave no opinion on Jordan's ability to maintain employment due to his neurocognitive impairments.

The ALJ considered Pollock's report in reaching his RFC determination. The ALJ noted that Pollock's opinion regarding the severity of Jordan's cognitive

---

[1] The limitations were: borderline intellectual functioning; moderately deficient sentence comprehension; mildly deficient math skills; moderately deficient sentence repetition; poor visual motor integration; mildly deficient immediate auditory memory; mildly deficient logical verbal memory; severely deficient visual recognition memory; poor executive functioning (multitasking, planning and organization, problem solving); history of cocaine dependence; criminal history; and periods of depression and anxiety.

limitations was inconsistent with Jordan's ability to obtain his GED and a welding certificate while incarcerated. The ALJ also noted that during the evaluation "Jordan's thought processes were logical and goal-directed with no apparent defect in form or content. His ability to use good judgment when confronting practical situations was fair, and his insight into his condition was fair. His eye contact was good. His mood was good and his affect was congruent with his mood. . . . His comprehension of test instructions was fair and he put forth good effort. He was slow to give an answer if he did not know it for sure. His attention and concentration were good." Dkt. 10-9 at 26. These observations are inconsistent with Pollock's opinion as to the severity of Jordan's limitations.

The ALJ also properly considered the State agency medical expert's evaluation of the evidence on December 8, 2010. *See* 20 C.F.R. § 416.927(f)(2); SSR 96-6p, 1996 WL 374180 (state agency physicians are experts in disability evaluation). That evaluation found Jordan could "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, and interact with co-workers and supervisors." Dkt. 10-9 at 51. The ALJ was not required

to give Pollock's opinion controlling weight in the face of contradictory evidence. *See Greenspan v. Shalala,* 32. F.3d 232, 237 (5th Cir. 1994).[2]

Jordan argues that the vocational expert's testimony supports his position that if his deficits in the ability to plan, organize, and understand and remember instructions were included in his RFC, he would be unable to perform any work. Dkt. 19 at 12. But the vocational expert testified that a claimant who had "*no ability* to multitask, plan, organize, or solve problems" would be unable to maintain employment. But Pollock only opined that Jordan had deficits in executive functioning, not that he had *no ability* at all.

The ALJ incorporated significant limitations in his RFC assessment relating to Jordan's cognitive disorder and borderline intellectual functioning. The ALJ found that Jordan was limited to the ability "to understand, remember, and carry out simple 1, 2, or 3 step instructions and make simple decisions; only occasional interaction with the public, coworkers, and supervisors; and unable to work at a production rate pace." Dkt. 10-3 at 32. This RFC is supported by the record and is not error.

---

[2] It should be noted that Pollock was a consulting expert who only examined Jordan once, not a treating physician as was addressed in *Newton v. Apfel*, 209 F.3d 448, 256-57 (5th Cir. 2000).

**Conclusion**

For the reasons stated above, Jordan's motion is denied and the Commissioner's motion is granted. A separate final judgment will be entered affirming the Commissioner's finding that Jordan is not disabled within the meaning of the Act.

Signed at Houston, Texas on November 19, 2013.

Stephen Wm Smith
United States Magistrate Judge